**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | | |
|---|---|---|
| ROSA MARIA VARGAS, | ) | NO. CV 13-2116-E |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| CAROLYN W. COLVIN, ACTING COMMISSIONER OF SOCIAL SECURITY,[1] | ) ) | **AND ORDER OF REMAND** |
| | ) | |
| Defendant. | ) | |

Pursuant to sentence four of 42 U.S.C. section 405(g), IT IS HEREBY ORDERED that Plaintiff's and Defendant's motions for summary judgment are denied and this matter is remanded for further administrative action consistent with this Opinion.

///
///
///
///

---

[1] Carolyn W. Colvin, who became Acting Commissioner of Social Security as of February 14, 2013, is hereby substituted as Defendant in this matter. See Fed. R. Civ. P. 25(d)(1); 42 U.S.C. § 405(g).

**PROCEEDINGS**

Plaintiff filed a complaint on March 28, 2013, seeking review of the Commissioner's denial of disability insurance benefits. The parties filed a consent to proceed before a United States Magistrate Judge on May 10, 2013. Plaintiff filed a motion for summary judgment on September 24, 2013. Defendant filed a motion for summary judgment on November 20, 2013. The Court has taken the motions under submission without oral argument. See L.R. 7-15; "Order," filed April 1, 2013.

**BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION**

Plaintiff, a former stock clerk, alleges disability since July 30, 2004, based on a combination of exertional and non-exertional impairments (Administrative Record ("A.R.") 30-941). Plaintiff's last insured date was December 31, 2009, at which time Plaintiff was 52 years old (A.R. 31, 47, 357).

In the most recent administrative decision, an Administrative Law Judge ("ALJ") found that "[t]hrough the date last insured, the claimant had the following severe impairments: osteoarthritis of the back, both hands, and both knees; as well as depression, and other psychological factors affecting her physical medical condition; and diabetes" (A.R. 33). The ALJ found that "[t]hrough the date last insured, the claimant was unable to perform any past relevant work" (A.R. 47). The ALJ also found, however, that "through the date last insured, the claimant had the residual functional capacity to perform

light work . . . except she is precluded from climbing ladders, ropes or scaffolds; she is precluded from working at unprotected heights; she can tolerate only occasional vibration or exposure to extreme cold; she can occasionally climb ramps or stairs; she can occasionally balance, crouch, crawl, kneel, stoop, or handle or finger (bilaterally); and she is limited to simple routine tasks (A.R. 38).

A vocational expert testified that a person having the residual functional capacity the ALJ found to exist could work as a "school bus monitor . . . [i]n the local economy, 140 jobs; in the national economy, 5,500" (A.R. 143).[2] In reliance on this testimony, the ALJ denied disability benefits, stating that the job of school bus monitor "existed in significant numbers in the national economy" (A.R. 48). The Appeals Council denied review (A.R. 1-3).

**STANDARD OF REVIEW**

Under 42 U.S.C. section 405(g), this Court reviews the Administration's decision to determine if: (1) the Administration's findings are supported by substantial evidence; and (2) the Administration used proper legal standards. See Carmickle v. Commissioner, 533 F.3d 1155, 1159 (9th Cir. 2008); Hoopai v. Astrue, 499 F.3d 1071, 1074 (9th Cir. 2007).

---

[2] The ALJ's decision states that "the Vocational Expert estimated there were 140 such jobs; and nationally, there would be over 5,500" (A.R. 48). Actually, the vocational expert did not estimate that there would be "over 5500" (emphasis added). Defendant's Motion contains a similar mischaracterization of the evidence (Defendant's Motion at 8 ("at least 5,500 exist throughout the national economy") (emphasis added)).

**DISCUSSION**

This case requires that the Court determine whether 140 jobs "locally" and 5,500 jobs "nationally" constitute "significant numbers" of jobs within the meaning of 42 U.S.C. section 423(d)(2)(A). Following the rationale of the Ninth Circuit's decision in Beltran v. Astrue, 700 F.3d 386 (2012) ("Beltran"),[3] this Court concludes that these numbers of jobs are not "significant numbers" of jobs.

**I.  The Applicable Statute and the Burden on the Administration**

Section 423(d)(2)(A) provides:

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists

---

[3] This Court must follow the majority opinion in Beltran. See Hart v. Massanari, 266 F.3d 1155, 1170 (9th Cir. 2001) (district judge may not "disagree with his learned colleagues on his own court of appeals who have ruled on a controlling legal issue"); Zuniga v. United Can Co., 812 F.2d 443, 450 (9th Cir. 1987) ("District courts are, of course, bound by the law of their own circuit."). Consequently, Defendant's citation of the district court opinion in Beltran and Circuit Judge Ikuta's "strongly worded" dissenting opinion in Beltran can carry no persuasive weight herein.

```
 1          for him, or whether he would be hired if he applied for
 2          work.  For purposes of the preceding sentence (with respect
 3          to any individual), "work which exists in the national
 4          economy" means work which exists in significant numbers
 5          either in the region where such individual lives or in
 6          several regions of the country.
```

"After a claimant satisfies his initial burden of showing that a physical or mental impairment prevents him from performing his previous work, the burden shifts to the [Administration] to show that the claimant has the capacity to perform other work and that such other work exists in the national economy." Stone v. Heckler, 761 F.2d 530, 532 (9th Cir. 1985). Where, as here, a claimant's non-exertional impairments significantly limit his or her range of work "the grids do not apply, and the testimony of a vocational expert is required to identify specific jobs within the claimant's abilities." Polny v. Bowen, 864 F.2d 661, 663-64 (9th Cir. 1988); see Tackett v. Apfel, 180 F.3d 1094, 1103 (9th Cir. 1999); Burkhart v. Bowen, 856 F.2d 1335, 1340-41 (9th Cir. 1988). In the present case, the only specific job the ALJ identified in denying disability benefits was the job of school bus monitor (A.R. 48).

## II. "Significant Numbers . . . in the Region Where Such Individual Lives"

In Beltran, the Ninth Circuit determined that 135 jobs in the region where the claimant lived did not constitute "significant numbers" of jobs. Citing Walker v. Matthews, 546 F.2d 814, 820 (9th

Cir. 1976), the Beltran Court stated that where jobs are "very rare or generally unavailable to the claimant due to his limitations," an ALJ errs in finding that significant numbers of jobs exist. Beltran, 700 F.3d at 389. "Although, in Walker, we never established what number of jobs qualifies as 'very rare' or generally unavailable, a comparison to other cases shows that this case fits comfortably within Walker's purview. We have never set out a bright-line rule for what constitutes a 'significant number' of jobs. However, a comparison to other cases is instructive." Id. The Beltran Court then compared the 135 local jobs existing in that case to the numbers of local jobs the Ninth Circuit previously had found significant. Id. The Beltran Court observed that the 135 local jobs constituted only approximately 11 percent of the lowest number of local jobs the Ninth Circuit previously had found significant. Id. The Beltran Court then concluded that 135 jobs in a single region "qualifies" as a "very rare" number and therefore is not "significant." Id.

   The rationale of Beltran compels the conclusion that 140 jobs in the region where Plaintiff lives is not a "significant" number of jobs. The local region involved in Beltran was the Los Angeles region, the same local region involved herein. A comparison of the number 140 to the numbers of local jobs found "significant" in previous Ninth Circuit decisions reveals disparities nearly identical to those observed in Beltran. In short, if 135 jobs in the local region qualifies as "very rare" and therefore not "significant," 140 jobs in the same local region also qualifies as "very rare" and therefore not "significant." But see Craigie v. Bowen, 835 F.2d 56, 58 (3d Cir. 1987) (appearing to deem 200 local jobs "significant");

see also Yelovich v. Colvin, 2013 WL 3216042, at *1 (9th Cir. June 27, 2013) (finding 900 jobs in the local region "significant," and observing that in Barker v. Secretary, 882 F.2d 1474, 1478-79 (9th Cir. 1989), the Ninth Circuit referenced cases finding as few as 500 local jobs "significant").

**III. "Significant Numbers . . . in Several Regions of the Country"**

Although section 423(d)(2)(A) reads in the disjunctive, few cases within or outside of the Ninth Circuit have relied exclusively on a cumulation of jobs in non-local regions as the basis for denying disability benefits. See Barrett v. Barnhart, 368 F.3d 691, 692 (7th Cir. 2004). "In practice, the principal significance of the 'other regions' language in the statute is to prevent the Social Security Administration from denying benefits on the basis of 'isolated jobs that exist only in very limited numbers in relatively few locations outside of the region where [the applicant] live[s]' 20 C.F.R. § 404.1566(b)." Id. The Seventh Circuit has even stated that the test for entitlement to disability benefits is whether the claimant "is so disabled that there are no jobs in reasonable proximity to where she lives that she is physically able to do." Id. at 691. One judge in the United States District Court for the Central District of California has also stated that "[t]he better practice would be to establish that there is a sufficient number of jobs in claimant's region or in more than one region in the country." Espejo v. Astrue, 2009 WL 1330799, at *5 (C.D. Cal. May 11, 2009); accord Pennington v. Astrue, 2011 WL 4543967, at *18 (D. Ariz. Sept. 30, 2011). Even so, in accordance with the statute's disjunctive phrasing, this Court

assumes that disability benefits must be denied when jobs do not exist in "significant numbers" in the region where the claimant lives but do exist in "significant numbers" in other regions of the country.

In concluding that 1,680 jobs nationally did not constitute "significant numbers" of jobs, the Beltran Court reasoned:

> [W]e cannot consider the 1,680 jobs as a stand-alone figure; rather, as the statute states, we must consider this number in light of the fact that it represents jobs across "several regions." Id. Although 1,680 jobs might seem a "significant number" standing alone, distributing these jobs between several regions across the nation shows that it is not "significant" after all. If 135 jobs available in one of the largest regions in the country is not a "significant number," then 1,680 jobs distributed over several regions cannot be a "significant number" either. We need not decide what the floor for a "significant number" of jobs is in order to reach this conclusion.

Beltran, 700 F.3d at 390.

The same reasoning appears to compel the conclusion that 5,500 jobs nationally does not constitute "significant numbers" of jobs. If 140 jobs available in one of the largest regions in the country is not a "significant number," then 5,500 jobs distributed over several regions would not appear to be a "significant number" either. In this context, the term "region" "is flexible" and can refer to "the entire

state" or to "a particular area of the state."  Social Security Law and Practice § 43:137 (Dec. 2013); cf. Harvey L. McCormick, Social Security Claims and Procedures § 8:55 (6th ed. 2011) ("When considering the number of jobs available to a Navajo claimant living on Navajo land, the largest appropriate region is the Navajo Nation"). In the present case, neither the vocational expert nor the ALJ attempted to parse the 5,500 national number into the numbers of jobs existing in particular "regions of the country."  Nor did the vocational expert or the ALJ identify how many regions of the country were involved in cumulating the 5,500 number.  If one were (conservatively) to limit the number of "other regions" nationally to 50 (comprising one region consisting of all of California outside the Los Angeles region plus the other 49 states on a one region per state basis), and if one were to distribute the remaining jobs across those 50 regions, the average number of jobs per region still would be insignificant under Beltran.

A comparison of the present case to other post-Beltran cases also suggests that 5,500 is not a significant number.  See Ochoa v. Colvin, 2013 WL 4816130, at *8-9 (E.D. Cal. Sept. 6, 2013) (deeming a "close call" the issue of whether a 19,122 national number is a significant number); Valencia v. Astrue, 2013 WL 1209353, at *18 (N.D. Cal. March 25, 2013) (14,082 national number is not a significant number); cf. Coletta v. Massanari, 163 F. Supp. 2d 1101, 1106 (N.D. Cal. 2001) (pre-Beltran case expressing "serious doubt" that a 4,752 national number is a significant number); but cf. Hoffman v. Astrue, 2010 WL 1138340, at *15 (W.D. Wash. Feb. 8, 2010), adopted, 2010 WL 1138341 (W.D. Wash. March 19, 2010) (pre-Beltran case holding that 150 jobs in

a single state and 9,000 jobs nationally constitute significant numbers).

## IV. Remand

When there exists error in an administrative determination, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." INS v. Ventura, 537 U.S. 12, 16 (2002) (citations and quotations omitted). In the present case, there already have been two Appeals Council remands and four administrative hearings. Under these rare circumstances, permitting the Commissioner to try again to prove the existence of significant numbers of jobs Plaintiff can perform despite her debilitating impairments would threaten to create the kind of "heads we win; tails, let's play again" system of adjudication decried in Benecke v. Barnhart, 379 F.3d 587, 595 (9th Cir. 2004). The present record establishes that Plaintiff was disabled as of the December 31, 2009 date last insured. However, the present record does not necessarily establish that Plaintiff's impairments existed at a disabling level of severity as of the July 30, 2004 alleged onset date. Therefore, although the administrative proceedings already have been protracted, and the administrative record already is voluminous, a limited remand is required. The precise disability onset date (between July 30, 2004 and December 31, 2009) must be determined on remand, and benefits must then be calculated accordingly. See Social Security Ruling 83-20; Armstrong v. Commissioner, 160 F.3d 587, 589-90 (9th Cir. 1998) ("If the medical evidence is not definite concerning the onset date and medical inferences need to be made, SSR 83-20

10

1 requires the administrative law judge to call upon the services of a
2 medical advisor and to obtain all evidence which is available to make
3 the determination") (citations and quotations omitted).[4]

**CONCLUSION**

For all of the foregoing reasons, Plaintiff's and Defendant's motions for summary judgment are denied and this matter is remanded for further administrative action consistent with this Opinion.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: December 4, 2013.

_____/S/_____
CHARLES F. EICK
UNITED STATES MAGISTRATE JUDGE

---

[4] On remand, the Administration may also consider, if necessary and appropriate, Plaintiff's January 25, 2012 application for Supplemental Social Security Income.